USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JAN 1 4 2013

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                                    :
CARROLL B. B. LESESNE, M.D., ET AL.,                                :
                                    Plaintiffs,                     :
                                                                    :          12 Civ. 03641 (AJN)
            -v-                                                     :
                                                                    :              OPINION
                                                                    :
CHARLOTTE BRIMECOME, ET AL,                                         :
                                    Defendants.                     :
                                                                    :
------------------------------------------------------------------- X
```

ALISON J. NATHAN, District Judge:

Plaintiffs Dr. Carroll B.B. Lesesne and International Cosmetic Surgery, P.C. filed this action on May 8, 2012, against the Defendants, Charlotte Brimecome and Ian Brimecome, alleging tortious interference with contract and business relations, tortious interference with prospective business relations and economic advantage, and bad faith reporting under New York Public Health Law § 230(11)(b). Defendants move to dismiss. For the reasons articulated below, the Court GRANTS the motion to dismiss.

I. FACTS

In brief, the facts as alleged in the Complaint are as follows. In late April 2008, Charlotte Brimecome received several different plastic surgeries from Dr. Lesesne. (Compl. ¶¶ 13-15). Although Mrs. Brimecome initially expressed happiness with the results of these surgeries (Compl. ¶ 22), she and her husband apparently became dissatisfied with the results sometime thereafter (Compl. ¶¶ 25-30). This, according to Plaintiffs, led to "a malicious campaign against Dr. Lesesne" in which the Brimecomes "fabricated a number of lies about him and his medical practice . . . and repeatedly made false reports to governmental authorities." (Compl. ¶ 1).

Plaintiffs point to a number of alleged acts taken by the Brimecomes that Plaintiffs claim

1

were part of this malicious campaign. For example, Plaintiffs claim that the Brimecomes made a number of false statements about Dr. Lesesne and his medical practice on the internet, including some false allegations that Dr. Lesesne engaged in what would appear to be serious misconduct. (Compl. ¶¶ 28-29). In addition, Plaintiffs allege that the Brimecomes made false reports to both the New York Office of Professional Misconduct ("OPM") and the United Kingdom's General Medical Counsel ("GMC"). (Compl. ¶¶ 31-49). Moreover, Plaintiffs allege, without further elaboration, that "[u]pon information and belief . . . Charlotte Brimecome communicated with other patients of Dr. Lesesne in an effort to induce them to make complaints or support her complaints, and otherwise to refrain from dealing with Dr. Lesesne." (Compl. ¶ 26). The complaint to the GMC is alleged to have been made "in or about May, 2011" (Compl. ¶ 38) and the complaint to the OPM is alleged to have been made "sometime in early 2009" (Compl. ¶ 34). No dates are provided as to when Mrs. Brimecome allegedly contacted Dr. Lesesne's customers (Compl. ¶ 26) or made the alleged statements on the internet (Compl. ¶¶ 28-29 (alleging only that the statements were made "from at least late 2008 to date)).

## II.     DISCUSSION

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering a motion to dismiss, the Court must accept as true all facts alleged in the complaint, and must draw all reasonable inferences in favor of the plaintiff. *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). In addition to allegations in the complaint itself, the Court may consider documents attached to the complaint as exhibits and documents incorporated by reference in the complaint. *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir.

2011); *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 234 (2d Cir. 2008).

### A. Tortious Interference Claims

The first and second causes of action of Plaintiffs' Complaint are for tortious interference with contract and tortious interference with prospective business relations, respectively. Defendants move to dismiss these claims, arguing that they are time-barred defamation claims in disguise and, regardless, do not sufficiently plead tortious interference. Plaintiffs argue that their claims indeed sound in tortious interference, not defamation, and that these claims are adequately pleaded. As described below, Defendants' motion to dismiss these causes of action is GRANTED.

#### 1. The Bulk of Plaintiffs' Tortious Interference Claims Sound in Defamation

Defamation is injury to a person's reputation, either by written expression (libel) or oral expression (slander). *Krepps v. Reiner*, 588 F. Supp. 2d 471, 483 (S.D.N.Y. 2008). Defamation actions under New York law are subject to a one year statute of limitations. N.Y. C.P.L.R. § 215(3); s*ee also Eisenberg v. Yes Clothing Co.*, 1991 U.S. Dist. LEXIS 7863, at *8-9 (S.D.N.Y. June 7, 1991). Courts have been vigilant in requiring plaintiffs to allege when the allegedly defamatory statements were made in order to adequately plead defamation. *See, e.g.*, *Biomed Pharms., Inc. v. Oxford Health Plans (NY), Inc.*, 775 F. Supp. 2d 730, 739 (S.D.N.Y. 2011); *Prowley v. Hemar Ins. Corp. of Am.*, 2010 U.S. Dist. LEXIS 45249, at *19-20 (S.D.N.Y. May 5, 2010); *Mahmud v. Bon Secours Charity Health Sys.*, 289 F. Supp. 2d 466, 468-49 n.3 (S.D.N.Y. 2003).

Moreover, courts in New York have also kept a watchful eye for claims sounding in defamation that have been disguised as other causes of action. *See, e.g.*, *Four Directions Air, Inc. v. United States*, 2007 U.S. Dist. LEXIS 72882, at *14 (N.D.N.Y Sept. 30, 2007); *Torres v.*

3

*CBS News*, 879 F. Supp. 309, 316 (S.D.N.Y. 1994); *Brick v. Cohn-Hall-Marx Co.*, 276 N.Y. 259, 264 (1937) ("[I]n applying the Statute of Limitations we look for the reality, and the essence of the action and not its mere name"); *Noel v. Interboro Mut. Indem. Ins. Co.*, 295 N.Y.S.2d 399, 400-01 (App. Div. 1st Dep't 1968).  New York courts maintain this distinction because "[a] contrary result might very well enable plaintiffs in libel and slander cases to circumvent the otherwise short limitations period" for defamation claims.  *Morrison v. National Broadcasting Co.*, 19 N.Y.2d 453, 458-59 (1967).  Here, Defendants contend that Plaintiffs have engaged in just such an attempt to recast their claims to evade the statute of limitations.

Plaintiffs do not argue that their claims, if sounding in defamation, are timely brought. (Pls. Opp. at 10-14).  Rather, Plaintiffs contend that their claims do not sound in defamation because defamation is defined in terms of "damage to reputation," and courts should not find that a claim sounds in defamation unless the harm suffered by the plaintiff is "'precisely the same as that caused by defamation—namely harm to the plaintiff's reputation.'"  (Pls. Opp. at 11 (quoting *Lindner v. IBM Corp.*, 2008 U.S. Dist. LEXIS 47599, at *43 (S.D.N.Y. June 18, 2008)). They argue that because they have claimed financial injury and economic harm stemming from the allegedly false statements made by the Brimecomes, their claims do not sound in defamation. (Pls. Opp. at 11-13).

As to the majority of the alleged malicious acts taken by the Brimecomes, the Court holds that claims arising from these acts sound in defamation rather than tortious interference. Beginning with the allegedly false statements made on the internet, to the extent the claims are based on these statements, these appear to be quintessential claims for defamation—the gravamen of these claims is that these false statements injured the Plaintiffs by damaging Dr. Lesesne's professional reputation.  *See Morrison*, 19 N.Y.2d at 458-59 (harm asserted by the

4

plaintiff was "precisely the same as that caused by defamation" where the plaintiff alleged injury to his "professional reputation"); *Noel*, 295 N.Y.S.2d at 400-01 (claim sounded in defamation where defendants circulated a bulletin designed intentionally to discredit and harm the plaintiff); *Kartiganer Associates, P. C. v. Newburgh*, 394 N.Y.S.2d 262-63 (App. Div. 2d Dep't 1977) (claim sounded in defamation when based on harm to professional reputation).

Plaintiffs' argument that their claims sound in tortious interference rather than defamation because they have pleaded economic harm is not well supported. There are a plethora of cases in which courts have found that claims brought under the guise of other causes of action actually sound in defamation, even if the plaintiff alleged economic harm. *See Pasqualini v. MortgageIT, Inc.*, 498 F. Supp. 2d 659, 664, 669-71 (S.D.N.Y. 2007) (claim based on dissemination of negative statements causing harm to professional reputation preventing plaintiff from securing new employment sounded in defamation); *Four Directions Air, Inc*, 2007 U.S. Dist. LEXIS 72882, at *5-6, *17-19 (claims sounded in defamation notwithstanding allegations of economic harm in the form of disqualification for future employment opportunities and loss of earnings because these harms resulted from injury to the plaintiff's professional reputation as a pilot); *Pedraglio Loli v. Citibank, Inc.*, 1997 U.S. Dist. LEXIS 20070, at *11 (S.D.N.Y. Dec. 16, 1997) (claim sounded in defamation even though it alleged harm to plaintiff's "business as an interpreter, which was his principle source of income"); *Torres*, 879 F. Supp at 313, 316 (claim based on allegedly false statements including that plaintiff was a "scam artist" sounded in defamation, notwithstanding alleged injury in the form of "loss of business"); *Ramsay v. Mary Imogene Bassett Hospital*, 495 N.Y.S.2d 282, 283-84 (N.Y. App. Div. 3d Dep't 1985) (holding that claims sounded in defamation where plaintiff was seeking employment as a physician and derogatory material about his competence as a physician had been circulated in the

area in which he was seeking employment); *Noel*, 295 N.Y.S.2d at 400-01 (holding that claims sounded in defamation notwithstanding allegation that the false statements caused "great loss and expense" including damage to the plaintiff's "business and credit … [and] impairment of health" (emphasis added)); *cf. Lines v. Cablevision Sys. Corp.*, 2005 U.S. Dist. LEXIS 42540, 11-14 (E.D.N.Y. Sept. 21, 2005).  These cases are in accord with the notion that a plaintiff should not be allowed to circumvent the statute of limitations for defamation by recharacterizing his claims as other torts.

Moreover, the cases Plaintiffs rely on are distinguishable.  In *Horstein v. General Motors Corp.*, 391 F. Supp. 1274, 1278-79 (S.D.N.Y. 1975), the claim was that the defendants' negligence "created a condition of affairs in which it was reasonably foreseeable that he would be mistakenly arrested for possession of stolen property."  Although this alleged negligence eventually caused a number of harms to the plaintiff, including damage to his reputation, the plaintiff did not base his claims on injury to reputation caused by a false statement—indeed, he did not even claim that the defendant communicated to the public the idea that he was a criminal. *Id.*

*Eisenberg* and *Lindner* are also distinguishable.  In *Eisenberg*, the plaintiff alleged, among other things, that the defendants expressly called for her termination, leading her employer to fire her.  *Eisenberg*, 1991 U.S. Dist. LEXIS 7863, at *3-4.  The court held that "[a]lthough part of plaintiff's claim in Count I is that defendants' actions injured her reputation, plaintiff also claims that her economic interests, of which defendants were aware, were injured by defendants' intentional acts." *Id.* at *11.  *Lindner* similarly held that the plaintiff's allegations that the defendants had interceded with prospective employers to dissuade them from hiring him, causing loss of employment and financial harm, adequately stated a claim for tortious

6

interference.  *See Lindner*, 2008 U.S. Dist. LEXIS 47599, at *41-45.

*Eisenberg* and *Lindner*, therefore, stand for the proposition that tortious interference with contract or prospective business relations may be accomplished "by words," and that not all claims in which a plaintiff is harmed by another's speech falls under the rubric of defamation. *See Eisenberg*, 1991 U.S. Dist. LEXIS 7863, at *12.   They do not support the general proposition, urged by Plaintiffs, that any allegation of financial injury is sufficient to recast a claim for defamation as a claim for tortious interference.  In contrast to *Eisenberg* and *Lindner*, the Brimecomes' statements on the internet appear to be precisely the sort of generalized harm to professional reputation that—even if causing some economic loss—gives rise to a suit for defamation.

The same analysis applies to the extent that Plaintiffs premise their claims for tortious interference on the Brimecomes' complaints to the GMC and OPM.  (Compl. ¶ 57).  There is no suggestion in the Complaint as to how the filing of the GMC and OPM complaints caused a breach of contract or interfered with Plaintiffs' future business relationships, as will subsequently be discussed in more detail with respect to whether Plaintiffs have adequately pleaded their claims in any event.  (Compl. ¶¶ 31-59).  But even setting aside the adequacy of Plaintiffs' pleadings, as a substantive matter the Complaint suggests only that there may have been some potential injury to Dr. Lesesne's professional reputation due to the filing of these complaints. This, too, is the basis for a claim which sounds in defamation, not tortious interference.[1]

An arguable exception to the above analysis is the Complaint's vague allegation that the

---

[1] By way of example, had Dr. Lesesne suffered a loss of his license or the suspension of his practice during the pendency of these complaints, causing him to lose existing or future customers, a claim on this set of facts might be parallel to the claims in *Eisenberg* and *Lindner*.  But Plaintiffs have presented no such allegations.  The only other harm that Plaintiffs allege is that they were required to spend time and money defending themselves against the OPM and GMC complaints (Compl. ¶ 36), but there is no suggestion how this expenditure interfered with any contract or prospective economic relationship.

Brimecomes contacted certain of Dr. Lesesne's patients in an effort to induce them to refrain from dealing with Dr. Lesesne. (Compl. ¶ 26). It is not clear, based on this conclusory allegation, what the nature of these contacts were. The Court need not resolve this issue, however: even if a claim based on these allegations would sound in tortious interference with contract or prospective economic relations, these claims have not be adequately pleaded, as explained below.

### 2. Plaintiffs' Claims for Tortious Interference Have Not Been Adequately Pleaded

The Court concludes that, for the most part, Plaintiffs' claims sound in defamation rather than tortious interference. However, even if Plaintiffs' tortious interference claims did not sound in defamation, Plaintiff has failed to adequately plead these claims, providing an additional basis for dismissal.

Defendants contend that, even if Plaintiffs' claims do not sound in defamation, Plaintiffs have not adequately pleaded their first claim, tortious interference with contract, because they have not identified any specific contract that has been interfered with. (Mot. at 6; Reply at 2-6). It indeed appears that, as a rule, conclusory allegations of interference with an unspecified contract are insufficient to plead tortious interference. *See Krepps*, 588 F. Supp. 2d at 484 ("Krepps has failed to allege the existence of a valid contract."); *Leadsinger, Inc. v. Cole*, 2006 U.S. Dist. LEXIS 55638, at *35-37 (S.D.N.Y. Aug. 10, 2006) (holding that plaintiff failed to allege the relevant terms of the contracts that were breached and collecting cases in which dismissing tortious interference with contract claims for failure to adequately allege the contractual terms that were breached); *Pitcock v Kasowitz, Benson, Torres & Friedman, LLP*, 915 N.Y.S.2d 239, 241 (App. Div. 1st Dep't 2011) (holding that plaintiff failed to state such a claim because he had not alleged "in nonconclusory language, the essential terms of the parties'

contract, including the specific provisions upon which liability is predicated").

Plaintiffs response is to baldly assert that their allegations are sufficient, pointing to general statements in their Complaint that Defendants interfered with the relationship between Dr. Lesnesne "and his patients" or other unspecified third parties. (Opp. at 13; Compl. ¶¶ 53, 55). Plaintiffs cite to no authority in support of their contention that their vague allegations are sufficient to plead tortious interference with contract nor any reason to depart from the holdings of the cases just cited.[2]

Defendants similarly contend that Plaintiffs have not adequately pleaded their second claim, tortious interference with prospective economic advantage because they have not pleaded any prospective relationship with which the Brimecomes interfered. Here, Plaintiffs again maintains that their allegations are adequate, citing *Leadsinger*, 2006 U.S. Dist. LEXIS 55638, at *38-42, for the proposition that such specificity is not required. However, Plaintiffs' position is against the weight of authority, which requires a plaintiff to identify the potential customers at issue when asserting a cause of action for interference with prospective economic advantage. *Jim Mazz Auto, Inc. v. Progressive Cas. Ins. Co.*, 2009 U.S. Dist. LEXIS 31945, at *15-17 & n.3 (W.D.N.Y. Feb. 5, 2009) (noting that the weight of authority requires identification of the potential customers at issue, citing *Leadsinger* as adopting the minority position, and noting the holding in *Leadsinger* may have been abrogated by *Twombly*, regardless); *see also Gianni Versace, S.P.A. v. Versace*, 2003 U.S. Dist. LEXIS 2587, at *6-7 (S.D.N.Y. Feb. 24, 2003); *EnviroSource, Inc. v. Horsehead Resource Dev. Co.*, 1996 U.S. Dist. LEXIS 9099, at *40-41 (S.D.N.Y. June 28, 1996); *Winner Int'l v. Kryptonite Corp.*, 1996 U.S. Dist. LEXIS 2182, at *10

---

[2] Plaintiffs also contend that they did not provide additional information because of patient confidentiality concerns, but acknowledge that they could have provided this information accompanied by a request that this portion of their Complaint be maintained under seal (Pls. Opp. at 13, 14 n.4), a point they were aware of before the motion to dismiss was fully briefed (D.E. 10).

(S.D.N.Y. Feb. 26, 1996). For these reasons, even if construed as claims for tortious interference rather than defamation, Plaintiffs' claims are not adequately pleaded and are still subject to dismissal.

Finally, the Court addresses Plaintiffs' request for leave to replead in the event that their allegations are found deficient. The Court's individual rules provide that in response to a motion to dismiss the non-moving party must elect either to amend its complaint or rely on the pleading being attacked, with no further opportunities to amend. *See* Individual Rules in Civil Cases § 5.F, *available at* <http://www.nysd.uscourts.gov/cases/show.php?db=judge_info&id=683>. Plaintiffs were aware of this rule, as evidenced by their submission of a letter acknowledging the rule but expressing their intention not to follow it. (D.E. 120 (citing the applicable rule and stating that they "do not intend to file an amended pleading at this time because Plaintiffs firmly believe the complaint is both timely and sufficiently pleaded" but stating that if the Court determines the complaint is deficient they will request leave to amend). In response to this letter, the Court ordered that "Plaintiffs may either amend their complaint or rely on the pleading being attacked. If Plaintiffs elect not to amend, no further opportunities to amend will be granted to cure any deficiencies raised by the motion to dismiss." (D.E. 10). Plaintiffs chose not to amend.

Plaintiffs' request for leave to amend is therefore improper on at least two fronts. First, it is not in compliance with the Court's rules. *See Nightingale Group, LLC v. Cw Capital Mgmt.*, 2012 U.S. Dist. LEXIS 93197, at *37-41 (S.D.N.Y. July 5, 2012) (denying leave to amend based on a similar rule, where the plaintiff had a known opportunity to amend to cure defects in the complaint and chose to forego it); *Brown v. Kay*, 2012 U.S. Dist. LEXIS 16440, at *54-55 n.24 (S.D.N.Y. Feb. 9, 2012). Second, Plaintiffs have not and cannot show good cause for ignoring the Court's order making clear the schedule on which Plaintiffs could amend their Complaint to

10

cure any deficiencies raised by the motion to dismiss. *See Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 243-45 (2d Cir. 2007) (noting that, where a scheduling order provides a particular time to amend a complaint, the liberal amendment standards of Rule 15 give way to the more stringent "good cause" standard of Rule 16(b)). As such, Plaintiffs' request to replead is denied.

### B. New York Public Health Law § 230(11)(b)

Plaintiffs also attempt to bring a claim under New York Public Health New § 230(11)(b). Section 230(11)(a), the subsection immediately preceding § 230(11)(b), requires that certain medical professionals report misconduct to a medical board created by § 230, and also allows such reports by "any other person." N.Y. Pub. Health Law § 230(11)(a). Section 230(11)(b) provides, in turn, that "[a]ny person, organization, institution, insurance company, osteopathic or medical society who reports or provides information to the board in good faith, and without malice shall not be subject to an action for civil damages or other relief as the result of such report." *Id.* § 230(11)(b). Plaintiffs claim this provision creates an implied right of action for bad-faith or malicious reporting to the state board. The Court holds that it does not.

Three essential factors govern the Court's inquiry into whether § 230(11)(b) creates an implied right of action: "'(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme.'" *Schlessinger v. Valspar Corp.*, 686 F.3d 81, 2012 U.S. App. LEXIS 14089, at *15-16 (2d Cir. 2012) (quoting *Sheehy v. Big Flats Community Day, Inc.*, 73 N.Y.2d 629, 633 (1989)). Consideration of these factors demonstrates that § 230(11)(b) does not give rise to an implied private right of action for bad-faith reporting to the state board.

First, § 230, as a general matter, does not appear to have been enacted for the benefit of individuals against whom reports are being made—rather, it is creating a scheme to regulate medical misconduct. Even Section 230(11)(b) in particular is, by its terms, directed not toward benefiting doctors who have had false reports made against them; it is directed toward protecting individuals who have made complaints to the medical board.

Second, and relatedly, an implied right of action would not promote the legislative purpose of § 230 of creating a board to regulate medical misconduct. The New York Court of Appeals has explained that the purpose of § 230(11)(a) was to "encourag[e] complaints," primarily by medical professionals, and to address the reluctance of such individuals to provide information regarding errant doctors because of a fear of litigation. *McBarnette v. Sobol*, 83 N.Y.2d 333, 339-41 (1994). Creation of an implied right of action in § 230(11)(b) would thus be *counter* to the legislative purpose due to the likelihood that it would chill such complaints.

Third, an implied right of action would be contrary to the legislative scheme. In particular, § 230(11)(a) provides that reports to the medical board "shall remain confidential and shall not be admitted into evidence in any administrative or judicial proceeding." N.Y. Pub. Health Law § 230(11)(a); *see also McBarnette*, 83 N.Y.2d at 338-41 (noting this general rule of confidentiality, although finding certain exceptions exist to allow the physician to confront witnesses against him). An express provision that reports to the board may not be used in judicial proceedings runs directly contrary to an implied right of action based on such reports.

Other courts that have considered this issue have reached divergent results. On the one hand, Plaintiff points to *Foong v. Empire Blue Cross & Blue Shield*, 762 N.Y.S.2d 348, 349 (App. Div. 1st Dep't 2003), which held that such an implied right of action exists, albeit without substantial analysis of the text or purpose of that statute. Such a decision is a "helpful indicator"

12

on how the New York Court of Appeals would resolve the case, but may be disregarded if there is "other persuasive data that the [New York Court of Appeals] would decide otherwise." *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000).  Likewise, Plaintiffs point to a single Southern District of New York case that held, without analysis, that the plaintiff in that case could "pursue his ninth (bad faith reporting) cause of action"—but there is no indication that decision considered the question now before the Court. *Weisenthal v. United Health Care Ins. Co.*, 2007 U.S. Dist. LEXIS 91447, at *25-26 (S.D.N.Y. Nov. 29, 2007).

On the other hand, the decision in *Fine v. State of New York*, which addressed whether an implied right of action exists under § 230 for violation of the confidentiality provisions of that section, found there was no implied right of action. *See Fine v. State of New York*, 2005 WL 3700727, at *6 (N.Y. Ct. Cl., 2005).  The analysis in that decision is parallel in substantial respects to this Court's view of the statutory scheme: the *Fine* court noted, for example, that "achievement of statutory objectives (protection of both the complainant and the physician involved, as well as the removal of any disincentive for complainants to step forward) will not be enhanced by a civil remedy." *Id.*  Likewise, the *Fine* court indicated that "to the extent that the legislature can be said to have shed any light on the issue, it has signaled that a private cause of action is not appropriate." *Id.*

In light of the analysis above, the Court finds that the cases cited by Plaintiffs are not persuasive as to how the New York Court of Appeals would view § 230(11)(b).  The sparsely analyzed intermediate-court precedent in *Foong* does not convince the Court that a right of action should be implied based on § 230(11)(b) given the extent to which such a right of action would run counter to the purpose of § 230.  Defendants' motion to dismiss Plaintiffs' third cause of action is therefore GRANTED.

13

Dated: January 11, 2013
      New York, New York

_____
ALISON J. NATHAN
United States District Judge